**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-229C
(Filed: October 21, 2015)

**FILED**

**OCT 2 1 2015**

**U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HASSAN A. ABBAS, ) | |
| ) | |
| Plaintiff, ) | *Pro Se*; Rule 12(b)(1), Subject-Matter |
| ) | Jurisdiction; Rule 12(b)(6), Failure to |
| v. ) | State a Claim; Fifth Amendment Takings; |
| ) | Seventh Amendment. |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*Hassan Abbas*, Hanover Park, IL, Plaintiff *pro se*.

*James Sweet*, Trial Attorney, *Martin F. Hockey, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se*, Hassan Abbas, brought this action alleging a takings of his right to enforce certain unvalidated German bearer bonds in United States courts, in violation of the Fifth Amendment of the United States Constitution, and alleging a violation of his right to trial by jury under the Seventh Amendment of the United States Constitution. *See generally* Compl. The government has moved to dismiss plaintiff's complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot; RCFC 12(b)(1); RCFC 12(b)(6). For the reasons set forth below, the Court **GRANTS** defendant's motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff is an attorney admitted to the bar of the State of Illinois. Compl. at 1. On March 6, 2015, plaintiff commenced this action against the United States, seeking compensation for an alleged takings of his right to enforce certain WWI-era, unvalidated German bearer bonds that he has acquired in United States courts. *See generally* Compl. Plaintiff also alleges a violation of his right to a trial by jury under the Seventh Amendment of the United States Constitution. *Id.*

Specifically, plaintiff alleges that the government has taken his property interest in the Bonds without just compensation, by entering into the Agreement Regarding Certain Matters Arising from the Validation of German Dollar Bonds in 1953 ("Validation Treaty"). Compl. at 1-4, 7; Pl. Opp. at 21; April 1, 1953, 4 U.S.T. 885. Plaintiff also alleges that the government has deprived him of his Seventh Amendment right to trial by jury by entering into the Validation Treaty. Compl. at 3.

#### 1. The Bonds

Plaintiff owns unvalidated German bearer bonds valued at approximately 1000 USD (the "Bonds"). Compl. at 1, 6; Pl. Opp. at 2. It is undisputed that plaintiff did not own the Bonds at the time that the United States entered into the Validation Treaty. Pl. Opp. at 21; April 1, 1953, 4 U.S.T. 885.

In fact, plaintiff acknowledges that he did not acquire the Bonds upon their first issuance. Pl. Opp. at 21. Plaintiff has not, however, provided the Court with any other information about when—or under what circumstances—he acquired the Bonds. Pl. Opp. at 21.

Prior to commencing this action, plaintiff served as the attorney representing a group of bondholders in a lawsuit brought against the Federal Republic of Germany ("Germany") in the United States District Court for the Northern District of Illinois to enforce German bearer bonds. *See Bleier v. Bundesrepublik Deutschland*, No. 08 C 06254, 2011 WL 4626164 (N.D. Ill. Sept. 30, 2011), *aff'd sub nom Korber v. Bundesrepublik Deutschland*, 739 F.3d 1009 (7th Cir. 2014). In that case, the group of bondholders challenged the legality of the validation processes outlined

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl. at ___"), defendant's motion to dismiss ("Def. Mot. at ___"), plaintiff's opposition thereto ("Pl. Opp. at ___"), and defendant's reply ("Def. Rep. at ___"). Except where otherwise noted, the facts recited here are undisputed.

2

in the Validation Treaty and sought the payment of their bonds. *Id.* at *1, 4. The district court dismissed their claim for failure to state a claim and as time-barred under the applicable statutes of limitations. *See generally* Order, *Bleier v. Bundesrepublik Deutschland*, No. 08 C 06254, 2011 WL 4626164 (N.D. Ill. Sept. 30, 2012); *Korber*, 739 F.3d at 1011. Following an appeal of the district court's dismissal, the United States Court of Appeals for the Seventh Circuit affirmed the district court's decision to dismiss the case. *Korber*, 739 F.3d at 1012-13.

### 2.  Historical Background

During the period 1924 to 1933, certain German states and banks sold bearer bonds in United States' markets in order to raise capital and rebuild its economy after World War I. Def. Mot. at 1-2; *World Holdings v. Fed. Rep. of Germany*, 701 F.3d 641, 646 (11th Cir. 2012); *Fulwood v. Fed. Rep. of Germany*, 734 F.3d 72, 75 (1st Cir. 2013). A large quantity of these bonds remained outstanding after World War II. Pl. Opp. at 2; Def. Mot. at 2; *Abrey v. Reusch*, 153 F. Supp. 337, 339 (S.D.N.Y. 1957).

In the 1950s, the Federal Republic of Germany took several steps to facilitate the payment of claims on these bonds. Def. Mot. at 3. Specifically, in 1952, Germany enacted the German Validation Law for Foreign Bonds ("Validation Law"), pursuant to which Germany assumed liability on the bonds if a bondholder could demonstrate that the bonds had not been located within Germany on January 1, 1945. Def. Mot. at 3; *Mortimer Off Shore Servs., Ltd. v. Germany*, 615 F.3d 97, 102 (2d Cir. 2010). Subsequently, in 1953, Germany entered into the London Agreement on German External Debts ("London Debt Agreement") with several countries including the United States. Feb. 27, 1953, 4 U.S.T. 443; Pl. Opp. at 2. The London Debt Agreement served as a settlement offer to the bondholders covered by that agreement. 4 U.S.T. 443, 447; Pl. Opp. at 2. To that end, the London Debt Agreement required that bondholders who accepted the settlement terms under the agreement validate their bonds, pursuant to the Validation Law, before receiving payment from Germany. Pl. Opp. at 2-3. Germany completed settlement payments pursuant to the London Debt Agreement on October 3, 2010. Pl. Opp. at 2; *World Holdings*, 701 F.3d at 653-54.

In 1953, the United States entered into two bilateral treaties related to the German bonds. Def. Mot. at 3-4; Pl. Opp. at 3. First, Germany and the United States entered into the Agreement Between the Government of the United States of America and the Government of the Federal

Republic of Germany Regarding the Validation of Dollar Bonds of German Issue ("Agreement on Validation Procedures") on February 27, 1953. 4 U.S.T. 797. The Agreement on Validation Procedures required that all bondholders validate their bonds and that bondholders register their bonds for validation by 1958. 4 U.S.T. 797, 839, 855-56 ("Bonds which have not been registered for validation before expiration of the applicable registration period . . . become invalid upon such expiration."); Def. Mot. at 3; *World Holdings*, 701 F.3d at 647; *Fulwood*, 734 F.3d at 76. The agreement also established the procedures for American citizens to validate their German bonds, including validating the bonds before the Board for the Validation of German Bonds in the United States. 4 U.S.T. 797, 839, 855-56; Def. Mot. at 3-4; *World Holdings*, 701 F.3d at 647.

In addition, Germany and the United States entered into an Agreement Regarding Certain Matters Arising from the Validation of German Dollar Bonds ("Validation Treaty") on April 1, 1953. 4 U.S.T. 885. The Validation Treaty provided that German bonds could be enforced in United States courts only if the bonds had been "validated either by the Board for the Validation of German Bonds in the United States established by the Agreement on Validation Procedures, or by the authorities competent for that purpose" in Germany. 4 U.S.T 885, 889; Def. Mot. at 4; Pl. Opp. at 3. The United States later dissolved the Board for the Validation of German Bonds in 1960. Def. Mot. at 4; Pl. Opp. at 3. The validation requirements in the Validation Treaty remain applicable to all owners of German bearer bonds. Compl. at 3; Def. Mot. at 3; *see also Fulwood*, 734 F.3d at 80.

### B. Procedural Background

Plaintiff filed the complaint in this matter on March 6, 2015. *See generally* Compl. On April 29, 2015, the government filed a motion to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). Def. Mot; RCFC 12(b)(1); RCFC 12(b)(6). On July 6, 2015, plaintiff filed a response to the government's motion to dismiss. *See generally* Pl. Opp. On July 17, 2015, the government filed a reply to the plaintiff's response to the motion to dismiss. *See generally* Def. Rep. The matter having been fully briefed, the Court addresses the pending motion to dismiss.

4

### III.  LEGAL STANDARDS

#### A. *Pro Se* Litigants

Plaintiff is an attorney and he is proceeding in this matter *pro se*. Parties proceeding *pro se* are granted greater leeway than litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"). In this regard, "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation" because "[h]e is deprived of the judgment of an independent third party in framing the theory of the case . . . and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Kay v. Ehrler*, 499 U.S. 432, 437 (1991). And so, plaintiff is afforded the same leeway customarily granted to all *pro se* plaintiffs.

In addition, while "a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). Given this, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007). The *pro se* plaintiff still must establish the Court's jurisdiction by a preponderance of the evidence. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010). And so, while the Court may excuse ambiguities in the plaintiff's complaint, the Court does not excuse the complaint's failures. *See Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

#### B. RCFC 12(b)(1)

When deciding a motion to dismiss based upon a lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). Plaintiff, nonetheless, bears the burden of establishing subject-matter jurisdiction, and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

5

### C. RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim pursuant to RCFC 12(b)(6), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson*, 551 U.S. at 94; RCFC 12(b)(6). To survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity" and determine whether it is plausible, based on these facts, to find against the defendant. *Id.* at 679.

### D. Fifth Amendment Takings Claims

The United States Court of Federal Claims has exclusive jurisdiction over Fifth Amendment takings claims in excess of $10,000. 28 U.S.C. § 1491(a); *see also Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). The Takings Clause of the Fifth Amendment guarantees just compensation whenever private property is "taken" for public use. U.S. Const. amend. V. The purpose of the Fifth Amendment is to prevent the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *see also Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1571 (Fed. Cir. 1994).

In order to have a cause of action for a Fifth Amendment takings, the plaintiff must point to a protectable property interest that is asserted to be the subject of the takings. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'") (citation omitted). In addition, courts have traditionally divided their analysis of Fifth Amendment takings into two categories—regulatory takings and physical takings.

In this regard, the United States Court of Appeals for the Federal Circuit has recognized that "[g]overnment action that does not directly appropriate or invade, physically destroy, or oust

6

an owner from property but is overly burdensome may be a regulatory taking." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014). In assessing whether a regulatory takings has occurred, courts generally employ the balancing test set forth in *Penn Central*, weighing the character of the government action, the economic impact of that action and the reasonableness of the property owner's investment-backed expectations. *Penn Central Transp. Co.*, 438 U.S. at 124-25. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (holding a regulation is a takings if it is "so onerous that its effect is tantamount to a direct appropriation or ouster")[2].

In contrast, physical or *per se* takings occur when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." *Transportation Co. v. Chicago*, 99 U.S. 635, 642 (1878); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982). When an owner has suffered a physical invasion of his property, the United States Supreme Court has noted that "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." *Lucas*, 505 U.S. at 1015. The distinction between a physical invasion and a governmental activity that merely impairs the use of that property turns on whether the intrusion is "so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *United States v. Causby*, 328 U.S. 256, 265 (1946).

---

[2] Regulations that are found to be too restrictive, so that the regulations deprive property of its entire economically beneficial or productive use, are viewed as categorical takings. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *see also A & D Auto Sales*, 748 F.3d at 1151-52. Categorical takings do not require the application of the *Penn Central* balancing test. *Id.* at 1152. The United States Supreme Court has mainly applied the categorical test to regulatory takings of real property. *See Lucas*, 505 U.S. at 1015–19. In *A & D Auto Sales*, the United States Court of Appeals for the Federal Circuit noted that it has at times applied the categorical test to tangible personal property as well. 748 F.3d at 1151-52 (citing *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196–98 (Fed. Cir. 2004)); *see also Maritrans, Inc. v. United States*, 342 F.3d 1344, 1353-55 (Fed. Cir. 2003).

### E. Statute Of Limitations And Standing Doctrine

Pursuant to title 28, United States Code, section 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This six-year limitations period is not susceptible to equitable tolling. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008). In addition, "a claim accrues 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)); *see also Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (("a cause of action does not become complete and present for limitations purposes until the plaintiff can file suit and obtain relief.") (citations omitted)).

Within the context of a Fifth Amendment takings claim, a plaintiff must bring a takings claim within six years of the date on which the takings occurred. 28 U.S.C. § 2501; *Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003); *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (holding that a Fifth Amendment takings claim accrues when the takings occurs) (citing *Steel Improvement & Forge Co. v. United States*, 174 Ct. Cl. 24, 29 (1966)). When a treaty is alleged to effectuate a takings, the plaintiff's takings claim accrues when the United States enters into the treaty. *See Alliance*, 37 F.3d at 1482; *cf. Goodrich*, 434 F.3d at 1336 (holding that the plaintiff's takings claim accrued when the United States Forest Service adopted a Record of Decision, "regardless of when the consequences of the decisions contained therein are felt."). In addition, a plaintiff must show that he or she owned the property alleged to have been taken at the time that the alleged takings occurred, to have standing to bring a takings claim. *Cristina Inv. Corp. v. United States*, 40 Fed. Cl. 571, 580 (1998) (citing *United States v. Dow*, 357 U.S. 17, 20-21 (1958)).

### IV. DISCUSSION

#### A. Plaintiff's Takings Claim Is Untimely

As an initial matter, the Court does not possess jurisdiction to consider plaintiff's takings claim because the claim is time-barred. It is well established that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon

8

is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Within the context of a Fifth Amendment takings claim, a plaintiff must bring a takings claim within six years of the date on which the takings occurred. 28 U.S.C. § 2501; *Hair*, 350 F.3d at 1260; *Alliance*, 37 F.3d at 1481 (holding a Fifth Amendment takings claim accrues when the takings occurs) (citing *Steel Improvement*, 174 Ct. Cl. at 29). In addition, when a treaty is alleged to effectuate a takings—as the plaintiff alleges in this case—the takings claim accrues when the United States enters into the treaty. *See Alliance*, 37 F.3d at 1482; *cf. Goodrich*, 434 F.3d at 1336 (holding that the plaintiff's takings claim accrued when the United States Forest Service adopted a Record of Decision, "regardless of when the consequences of the decisions contained therein are felt."). And so, in this case, plaintiff must show that he filed his takings claim within six years of the date on which the United States entered into the treaty that effectuated the alleged takings. *Id.*

The undisputed facts in this case show that plaintiff's takings claim accrued many decades before he commenced this action. Plaintiff states in his complaint that the alleged takings in this matter occurred when the United States entered into the Validation Treaty with Germany. Compl. at 1- 4, 7; Pl. Opp. at 2. It is without dispute that the United States entered into this treaty on April 1, 1953—more than sixty years before plaintiff commenced this action. Compl. at, *e.g.*, 1- 3; Pl. Opp. at 3. As established above, when a treaty is alleged to effectuate the takings, the takings claim accrues when the government enters into that treaty. *Alliance*, 37 F.3d at 1482; *see also Goodrich*, 434 F.3d at 1336. Given this, plaintiff's takings claim accrued when the United States entered into the Validation Treaty, and, as a result, he commenced this takings action well beyond the six year limitations period provided for in section 2501. *See* 28 U.S.C. § 2501 (plaintiff must bring claims before the United States Court of Federal Claims "within six years after such claim first accrues.") And so, plaintiff's takings claim is time-barred by the statute of limitations set forth in section 2501. 28 U.S.C. § 2501.

In his opposition to the government's motion to dismiss, plaintiff argues that his takings claim is timely because this claim accrued on October 3, 2010, when Germany completed certain payments to bondholders pursuant to the London Debt Agreement. Compl. at 1, 7-8; Pl. Opp. at 2, 23-24. Plaintiff, thus, argues that he was "prevented from obtaining relief until *after* October

9

3, 2010." Compl. at 12; Pl. Opp. at 23-24 (emphasis in original)[3]. But, plaintiff's argument is belied by the undisputed facts.

It is well established that "a claim accrues 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)); *see also Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (("a cause of action does not become complete and present for limitations purposes until the plaintiff can file suit and obtain relief.") (citations omitted)). Moreover, as discussed above, a takings claim based upon a treaty accrues when the United States enters into that treaty. *Alliance*, 37 F.3d at 1482; *see also Goodrich*, 434 F.3d at 1336. And so, here, plaintiff's takings claim must have accrued when all of the events related to the United States Government's decision to agree to the Validation Treaty and, specifically, the Treaty's validation requirement had occurred. *Id.*

It is without dispute that the government's decision to enter into the Validation Treaty in 1953 is the government action that imposed the obligation on plaintiff to validate his Bonds before enforcing the Bonds in United States courts. Compl. at 3; *see also* 4 U.S.T. 885, 889. Plaintiff does not allege—and the Court is not aware of—any subsequent action on the part of the United States regarding this requirement to validate the Bonds[4]. Pl. Opp. at 21-24. And so, the undisputed facts in this matter make clear that all of the events necessary to fix the liability of the government for allegedly taking plaintiff's right to enforce unvalidated German bearer bonds in

---

[3] Plaintiff incorrectly argues the Court must accept "as true for purposes of the motion to dismiss" his disputed factual assertion that the takings claim in this matter accrued on October 3, 2010. *See* Pl. Opp. at 23. It is well established that this Court is not required to accept disputed facts as true within the context of deciding a motion to dismiss. *Bloomington Hosp. v. United States*, 29 Fed. Cl. 286, 294 (1993) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986) ("In ruling on a motion to dismiss for failure to state a claim, [the Court] must accept as true the complaint's undisputed factual allegations, and should construe them in a light most favorable to the plaintiff.")); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when deciding a motion to dismiss based upon a lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.).

[4] Although it is without dispute that the United States later dissolved the Board for the Validation of German Bonds after the United States entered into the Validation Treaty, plaintiff does not allege that this action affected the validation requirement imposed by the Validation Treaty. Compl. at 3; Pl. Opp. at 3.

United States courts occurred at the time that the United States entered into the Validation Treaty. *Goodrich,* 434 F.3d at 1333.

For the same reason, plaintiff's argument that his takings claim accrued in 2010—when he first had the ability to bring suit to enforce the Bonds against <u>Germany</u>—is similarly without merit. Pl. Opp. at 22-23. Plaintiff argues that his takings claim is timely because he could not have filed suit to enforce the Bonds until Germany completed settlement payments under the London Debt Agreement. Compl. at 12; Pl. Opp. at 22-24. But, the date on which plaintiff could have filed a claim to enforce the Bonds against Germany is simply not relevant to determining when his takings claim against the United States accrued. Indeed, as discussed above, all of the actions on the part of the United States Government to require bondholders to validate their bonds before bringing suit in United States courts occurred in 1953—when the United States entered into the Validation Treaty. Germany's actions with respect to the settlement payments made pursuant to the London Debt Agreement simply have no bearing upon plaintiff's claim against the United States. And so, the timing of Germany's settlement payments under the London Debt Agreement cannot properly serve as the basis for establishing when plaintiff's takings claim accrued in this matter. *Alliance,* 37 F.3d at 1482.

In sum, the undisputed facts in this case make clear that plaintiff's takings claim accrued in 1953 and that he filed this claim well after the six-year statute of limitations period for bringing such a claim had expired. The six-year statute of limitations period set forth in section 2501 is a jurisdictional requirement for bringing suit in this Court. *See Martinez v. United States,* 333 F.3d 1295, 1316 (Fed. Cir. 2003). And so, the Court must dismiss this claim for lack of subject-matter jurisdiction[5]. RCFC 12(b)(1); 28 U.S.C. § 2501.

### B. Plaintiff Lacks Standing To Bring His Takings Claim

Plaintiff's takings claim is also jurisdictionally precluded because he lacks standing to bring the claim. "It is well established that 'only persons with a valid property interest at the

---

[5] Plaintiff also incorrectly argues international law should govern in this matter and that Germany's conduct tolled the statute of limitations in this case. Compl. at 4, 35-37; Pl. Opp. at 25-27. But, the matter before this Court is a takings claim brought against the United States, not a case to enforce sovereign debt under international law. *See generally* Compl. In addition, it is well established that the six-year limitations period set forth in section 2501 is not susceptible to equitable tolling. *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 136 (2008).

11

time of the taking are entitled to compensation.'" *CRV Enterprises, Inc. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010) (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)). As discussed above, the takings alleged in this case occurred when the United States entered into the Validation Treaty with Germany, in 1953. Compl. at 1-4, 7; *CRV Enterprises*, 626 F.3d at 1250; *Alliance*, 37 F.3d at 1481. Although plaintiff does not state when he acquired the Bonds, plaintiff acknowledges that he did not own the Bonds in 1953. Pl. Opp. at 21. Given this, it is without dispute that plaintiff did not hold a valid property interest in the Bonds in 1953. And so, plaintiff does not have standing to bring his takings claim and the Court must dismiss this claim. *CRV Enterprises*, 626 F.3d at 1249-50.

### C. Plaintiff Fails To State A Plausible Fifth Amendment Takings Claim

Plaintiff also fails to state a plausible takings claim in the complaint. RCFC 12(b)(6); *see also Twombly*, 550 U.S. at 570 (plaintiff fails to "state a claim to relief that is plausible on its face."). It is well established that identifying a cognizable property interest is the first step in a takings analysis. *See Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005) ("we do not reach this second step without first identifying a cognizable property interest."). To allege a plausible takings claim here, plaintiff must show that he had a cognizable property interest in the Bonds at the time of the alleged takings. *Chancellor Manor v. United States*, 331 F.3d 891, 901-02 (Fed. Cir. 2003) (citing *Wyatt*, 271 F.3d at 1096) ("It is axiomatic that only persons with a valid property interest at the time of taking are entitled to compensation."); *see also United States v. Dow*, 357 U.S. 17, 20-21 (1958). As discussed above, plaintiff acknowledges that the he did not own the Bonds at the time that the alleged takings occurred—when the United States entered into the Validation Treaty in 1953. Compl. at 1-3. Given this, plaintiff simply could not have had a cognizable property interest in the Bonds at the time of the alleged takings[6]. And so, the Court must also dismiss plaintiff's takings claim for failure to state a claim. RCFC 12(b)(6).

---

[6] Plaintiff also fails to establish that he owned the Bonds on October 3, 2010. *See generally* Compl.; Pl. Opp. And so, even if the Court accepts the premise that the alleged takings in this matter could have occurred in 2010, plaintiff as not shown that he had a cognizable property interest in the Bonds at that time. *Id.*

### D. The Court Does Not Possess Jurisdiction To Consider Plaintiff's Seventh Amendment Claim

Plaintiff's Seventh Amendment claim is also jurisdictionally barred. The Seventh Amendment codifies the right to trial by jury in certain civil cases in federal courts. U.S. Const. amend. VII. In the complaint, plaintiff alleges that, by entering into the Validation Treaty, "the U.S. has deprived [him] of the right to trial by jury to fix [his] damages," in violation of the Seventh Amendment. Compl. at 8; *see also* Compl. at 3, 13.

This Court does not possess jurisdiction to adjudicate claims brought pursuant to the Seventh Amendment. *Jaffer v. United States*, No. 95-5127, 1995 WL 592017, at *2 (Fed. Cir. Oct. 6, 1995) (holding that a violation of the Seventh Amendment does not "explicitly or implicitly obligate[ ] the federal government to pay damages," and the Seventh Amendment cannot "support a claim for relief in the Court of Federal Claims."); *see also Harris v. United States*, 118 Fed. Cl. 180, 190 (2014). And so, to the extent that plaintiff alleges a Seventh Amendment claim, the Court must also dismiss this claim for lack of subject-matter jurisdiction. RCFC 12(b)(1).[7]

### V. CONCLUSION

In sum, the undisputed facts in this matter show that plaintiff's takings and Seventh Amendment claims are jurisdictionally barred and warrant dismissal. Plaintiff's takings claim is time-barred because he failed to bring this claim within six years of the date the takings claim accrued—when the United States entered into the Validation Treaty with Germany in 1953. The undisputed facts also show plaintiff lacks standing to bring his takings claim, because he did not have a valid property interest in the Bonds at the time of the alleged takings. In addition, the Court must also dismiss plaintiff's Seventh Amendment claim, because the Court does not possess jurisdiction to adjudicate such claims.

---

[7] Because the Court has determined that it does not possess jurisdiction to consider plaintiff's takings claim, the Court does not reach the issues raised in defendant's motion to dismiss regarding whether the Validation Treaty could interfere with plaintiff's investment-backed expectations, or whether the Court's consideration of plaintiff's takings claim presents a political question. Def. Mot. at 8-12; Def. Rep. at 6-9.

The Court must also dismiss plaintiff's takings claim for failure to state a claim upon which relief may be granted, because the factual allegations in the complaint make clear that plaintiff held no cognizable property interest in the Bonds at the time of the alleged takings.

And so, for the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss and dismisses the complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

_____
LYDIA KAY GRIGGSBY
Judge